# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **JAMES AARON UNDERWOOD,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v.   ] | 1:21-cv-00830-ACA |
| ] | |
| **IFA HOLDINGS, LLC,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Plaintiff James Aaron Underwood alleges that Defendant IFA Holdings, LLC d/b/a Cygnal ("Cygnal") sent him two unsolicited robo-text messages asking him to fill out a survey despite his entry of his phone number on the National Do Not Call Registry. Mr. Underwood asserts that sending these messages violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A) ("Count One"); violated the Do Not Call Rule, 47 C.F.R. § 64.1300(c)(2) ("Count Two"); and violated the Alabama Telephone Solicitations Act ("ATSA"), Ala. Code § 8-19C-2 ("Count Three").

Cygnal moves to dismiss Mr. Underwood's second amended complaint for lack of standing and failure to state a claim. The court finds that Mr. Underwood has adequately alleged facts supporting standing at this stage in the case. Next, because Mr. Underwood adequately alleges a violation of the TCPA, the court

**WILL DENY** Cygnal's motion to dismiss Count One. However, the court **WILL GRANT** Cygnal's motion to dismiss Counts Two and Three because Mr. Underwood's allegations fail to state a claim for violation of the Do Not Call Rule or the ATSA.

I. **BACKGROUND**

Cygnal moves to dismiss the second amended complaint on jurisdictional grounds, under Rule 12(b)(1), and merits grounds, under Rule 12(b)(6). (Doc. 20). In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider documents a plaintiff attaches to a complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."). But the court may not consider evidence attached to a defendant's motion to dismiss unless that evidence was incorporated into the complaint by reference, of undisputed authenticity, and central to the plaintiff's claims. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

The same is not true of a court's consideration of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. If a defendant argues only that a complaint does not sufficiently allege a basis for subject matter jurisdiction, the court

decides the existence of jurisdiction based on the face the complaint, taking the complaint's allegations as true, just as in a Rule 12(b)(6) motion. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013). But "when a defendant mounts a factual challenge to subject matter jurisdiction, a district court may consider extrinsic evidence and weigh the facts to determine whether it may exercise jurisdiction." *Id.*

As the court explained at length in its previous order, the evidence attached to Mr. Underwood's complaint is a part of the pleadings that the court can and will consider in deciding the motion to dismiss. (Doc. 30 at 3). In addition, the court can and will consider the screenshots of the texts and the survey attached to Cygnal's motion because Mr. Underwood's second amended complaint incorporated the texts and the survey by reference. (*Id.* at 4). However, the court will not consider the affidavit Cygnal submitted because (1) the content of the affidavit does not affect the jurisdictional analysis and (2) the affidavit is a document outside the pleadings for merits purposes. (*Id.* at 4, 6–7).

Mr. Underwood alleges that he has a cell phone number that he listed on the National Do Not Call Registry. (Doc. 20 at 7 ¶ 29). Cygnal is a company that "robotexts and robocalls consumers with surveys on business and political topics, among others, for clients who want to use surveys to gauge how they should advertise and market goods and services." (Doc. 20 at 5 ¶ 18; *see also id.* at 7 ¶ 31).

On April 20, 2021, Cygnal sent a text message to Mr. Underwood's cell phone, stating: "AL is facing big choices, and folks across the state are speaking out. Make your voice heard today: https://ourvoicetogether.net/2104017/?p=G2W8H8GW Stop=end." (*Id.* at 7 ¶¶ 26–27; doc. 21-1 at 2). The next day, Cygnal sent another text message to Mr. Underwood's cell phone, stating: "Your input about AL's future is still needed. Don't miss this chance to share your opinions: https://ourvoicetogether.net/2104017/?p=G2W8H8GW Stop=end." (Doc. 20 at 7 ¶¶ 26–27; doc. 21-1 at 3).

The link provided in these text messages directed the recipient to a voter's survey about the recipient's feelings about legalizing certain types of gambling in Alabama, the recipient's knowledge and impression of certain gaming organizations and locations, and specifically the recipient's opinion of the Poarch Bank of Creek Indians. (Doc. 20 at 4 ¶¶ 19–21; doc. 21-1 at 4–27). People who took the survey were paid for their participation in coupons "and other financial rewards." (Doc. 20 at 6 ¶ 21).

Mr. Underwood spent time "answering the text messages and tracing their origin" and lost "use of his telephone for legitimate purposes and his productivity." (Doc. 20 at 9 ¶ 41).

## II.   DISCUSSION

Mr. Underwood asserts that Cygnal violated the TCPA by using an automatic telephone dialing system to send text messages to him without his prior written consent; that it violated the TCPA by sending telemarking and telephone solicitation text messages to him despite his number being on the Do Not Call Registry; and that Cygnal sent "calls" to Mr. Underwood in violation of the ATSA. (Doc. 20 at 12–16). Cygnal moves to dismiss these claims for lack of standing and for failure to state a claim. (Doc. 21). The court will address standing first.

1. Standing

Cygnal challenges Mr. Underwood's standing on the grounds that he cannot establish he suffered a concrete injury because he received only two text messages and he cannot establish a causal connection because Cygnal did not use technology generating random or sequential numbers. (Doc. 22 at 15–25). Cygnal bases its concreteness challenge on the Eleventh Circuit's opinion in *Salcedo v. Hanna*, 936 F.3d 1162 (2019) and its causation challenge on the United States Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over "cases" or "controversies." U.S. Const. art. III, § 2. One of the requirements to have a case or controversy is standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing has three elements: (1) "an injury in

5

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The first requirement—injury in fact—requires a showing that the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* Thus, a plaintiff cannot establish standing merely by alleging "a bare procedural violation, divorced from any concrete harm." *Id.* at 341.

There is no doubt that Mr. Underwood has alleged a particularized injury that can be redressed by a favorable judicial decision. *See Spokeo, Inc.*, 578 U.S. at 338. But Cygnal challenges whether Mr. Underwood has alleged a concrete injury or traceability. (Doc. 22 at 15–25). The court concludes that Mr. Underwood has adequately alleged all the elements of standing sufficiently for the pleading stage.

In *Salcedo*, the Eleventh Circuit held that a plaintiff who alleged he had received one text message in violation of the TCPA did not establish a concrete injury because he did not allege any tangible injuries (such as a specific amount of time lost addressing the text message or that receiving the text made his phone unavailable to him) and his alleged intangible injuries did not suffice to establish a

concrete injury based on history and the judgment of Congress. 936 F.3d at 1167–73; *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021) (explaining that *Salcedo* described lost time as a tangible injury). This court finds the allegations in the second amended complaint distinguishable from those in *Salcedo* because Mr. Underwood has alleged a tangible injury: he alleges that, over the course of two days, he received two text messages on the cell phone that he uses as his main residential line and that he spent time "answering the text messages and tracing their origin." (Doc. 20 at 7 ¶ 27, 7 ¶ 30, 9 ¶ 41). This is sufficiently specific to distinguish from Mr. Underwood's claim from the claim at issue in *Salcedo*, where the plaintiff's allegation was "time wasted only generally." *Salcedo*, 936 F.3d at 1168. It is plausible that "discovery will reveal evidence" to support Mr. Underwood's allegation that he suffered a tangible injury in the form of wasted time taking the survey and tracking down who sent it and why. *See Bell Atl. Corp. v. Twombly*, 50 U.S. 544, 546 (2007).

Next, Cygnal argues that Mr. Underwood cannot establish traceability because it has presented evidence that it does not use a random or sequential generator to store or dial telephone numbers, which the Supreme Court's *Duguid* decision held is an element of any TCPA claim. (Doc. 22 at 24–25); *Duguid*, 141 S. Ct. at 1167. As the court explained in its previous order, however, a claim's failure on the merits does not establish a lack of standing. (Doc. 30 at 6–7). Instead,

7

in determining whether the plaintiff has alleged traceability, the question is whether the alleged harms flow, even indirectly, from the challenged conduct. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). Here, assuming that Cygnal did in fact send text messages in violation of the TCPA and state law, Mr. Underwood's harms are traceable to that conduct.

In its reply brief, Cygnal argues for the first time that Mr. Underwood cannot establish traceability because he inflicted any harm on himself by clicking on the links contained within the text messages. (Doc. 37 at 8). But the Supreme Court has "made clear that an injury resulting from" an unlawful action "remains fairly traceable to [the action], even if the injury could be described as willingly incurred." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing two previous Supreme Court cases, one in which the plaintiff "subjected himself to discrimination" so that he could file suit and one in which a tester plaintiff had standing). Mr. Underwood's decision to click on the link in the texts or to spend time tracking down who sent the messages does not sever the traceability link.

Mr. Underwood has adequately alleged facts that support standing at the pleading stage. However, the court reminds Mr. Underwood that, assuming that his claims survive the Rule 12(b)(6) analysis, he must continue to establish standing at every stage of the case "in the same way as any other matter on which the plaintiff

bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

2. Merits

Cygnal contends that each of Mr. Underwood's claims fail on the merits as well. (Doc. 22 at 26–40). Thus, the court must determine whether the second amended complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations, but it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The court will address each of Mr. Underwood's claims in turn.

      i.    *TCPA*

In Count One, Mr. Underwood asserts that Cygnal's sending the two text messages violates the TCPA. (Doc. 20 at 12–13). Cygnal argues that Mr. Underwood fails to state a claim because he provided only a conclusory allegation that it used a random or sequential number generator. (Doc. 22 at 26–28).

The TCPA prohibits "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."[1] 47 U.S.C. § 227(b)(1)(A)(iii). An "automatic telephone dialing system" is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[ ] and . . . to dial such numbers." *Id.* § 227(a)(1). The Supreme Court has explained that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Duguid*, 141 S. Ct. at 1173.

Cygnal argues that Mr. Underwood fails to plausibly allege that it used an autodialer as that term is defined in the TCPA. (Doc. 20 at 26–28). In support, it cites only non-precedential district court decisions, all of which are factually distinguishable. Here, Mr. Underwood alleges that he received two text messages from a number with which he had no connection, and the content of the texts were not specifically targeted to him. This is sufficient to support a plausible inference that Cygnal used an automatic telephone dialing system. The court **WILL DENY** Cygnal's motion to dismiss this claim.

---

[1] Cygnal does not dispute that a text message constitutes a "call" under the TCPA. (*See generally* doc. 22); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").

    *ii.*  *Do Not Call Rule*

  In Count Two, Mr. Underwood asserts that Cygnal violated the Do Not Call Rule, which is set out at 47 C.F.R. § 64.1200(c)(2), by sending him text messages that constitute either telemarketing or telephone solicitations. (Doc. 20 at 13–14).

  The TCPA requires the Federal Communications Commission to make rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" 47 U.S.C. § 227(c)(1), and provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," *id.* § 227(c)(5). The federal regulations prohibit the initiation of "any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). "Telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" unless, among other exceptions not relevant here, the recipient gave "prior express invitation or permission." 47 U.S.C. § 227(a)(4); *see also* 47 C.F.R. § 64.1200(f)(15).

Cygnal contends that Mr. Underwood has not adequately alleged that the text messages were telephone solicitations because the texts did not encourage Mr. Underwood to purchase, rent, or invest in anything. (Doc. 22 at 29–30). Mr. Underwood responds that he has plausibly alleged that the purpose of the text messages was to promote gambling in Alabama. (Doc. 31 at 8). But even accepting as true Mr. Underwood's allegation that the underlying purpose of the texts was to "predispose the recipients favorably toward the Poarch Band of Creek Indians" and casino gambling (doc. 20 at 6 ¶¶ 19–20), attempting to sway the recipient in favor of an entity or a practice is not "encouraging the purchase or rental of, or investment in, property, goods, or services," 47 U.S.C. § 227(a)(4). Mr. Underwood therefore has not adequately alleged an essential element of his claim that the text messages violated the Do Not Call Rule.[2] The court **WILL GRANT** Cygnal's motion to dismiss this claim **WITH PREJUDICE**.

    *iii.*   *ATSA*

Mr. Underwood's final claim is that Cygnal violated the ATSA by sending the two text messages. (Doc. 20 at 15–16). The ATSA prohibits "mak[ing] or caus[ing] to be made any telephone solicitation to the telephone line of any residential subscriber in [Alabama] who has given notice to the commission of his

---

[2] Because Mr. Underwood's claim fails on this ground, the court will not address Cygnal's argument that the court should disregard the Federal Communications Commission's definition of a "residential telephone subscriber" in order to find that Mr. Underwood failed to allege he was a residential telephone subscriber. (*See* doc. 22 at 32–35).

or her objection to receiving telephone solicitations." Ala. Code § 8-19C-2(a). The statute provides a private cause of action for "[a] person who has received more than one telephone solicitation within a 12-month period by or on behalf of the same person or entity in violation of subsection (a) of Section 8-19C-2." *Id.* § 8-19C-7.

The ATSA draws its definitions from the Alabama Telemarketing Act. *See* Ala. Code § 8-19A-3 ("As used in this chapter and Chapter 19C [the ATSA], the following terms shall have the following meanings unless the context clearly indicates otherwise . . . ."). The Alabama Telemarketing Act defines two seemingly similar terms: "telephone solicitation" and "commercial telephone solicitation." A "telephone solicitation" as "[a] voice communication over a telephone line for the purpose of encouraging the purchase or rental of, or investment in property, goods, or services," subject to exceptions not relevant here. Ala. Code § 8-19A-3(17); *see also* Ala. Admin. Code § 770-X-5-.31(1)(o). A "commercial telephone solicitation" is either (1) "[a]n unsolicited telephone call" under certain circumstances, (2) "[o]ther communication" in which the caller offers "[a] gift, award, or prize . . . to a purchaser who has not previously purchased from the person initiating the communication," the caller invites a "telephone call response," and "[t]he salesperson intends to complete a sale or enter into an agreement to purchase during the course of the telephone call, or (3) "[o]ther communication," which can include

"a written or oral notification or advertisement transmitted through any means." *Id.* § 8-19A-3(3).

Cygnal contends that Mr. Underwood cannot state a claim under the ATSA because he does not allege that Cygnal made any "voice communication" to his residential telephone line. (Doc. 22 at 38–40). Mr. Underwood responds by pointing to Alabama Administrative Code § 770-X-5-.31(2)(c), which provides that "[t]elephone solicitors must adhere to state and federal statutes, rules and regulations regarding telephone solicitation practices," and a section of the ATSA which provides that "[t]he remedies, duties, prohibitions, and penalties of Sections 8-19C-2 to 8-19C-10, inclusive, of this chapter shall not be exclusive and shall be in addition to all other causes of action, remedies, and penalties provided by law," Ala. Code § 8-19C-11. (Doc. 31 at 14). He argues that the code section and the regulation establish that "telemarketers must abide by all federal and state telemarketing statutes and regulations no matter whether the Alabama statute facially addresses a particular practice at issue." (*Id.*).

The court rejects Mr. Underwood's suggestion that the Alabama Code and regulation have somehow incorporated the TCPA into the ATSA. Although Alabama's regulations impose a duty on telemarketers to abide by federal and state law, the ATSA by its terms imposes liability only in specific circumstances, and one of those circumstances is the receipt of two or more "telephone solicitations." Ala.

14

Code § 8-19C-7. The Alabama Code specifically defines a telephone solicitation, *id.* § 8-19A-3(17), and this court cannot disregard that definition merely because a regulation also imposes a general duty on telemarketers to comply with all laws.

Mr. Underwood next argues that the court can ignore the Alabama Code's definition of "telephone solicitation" as requiring a "voice communication" because the Code defines "commercial telephone solicitation" to include certain "other communications." (Doc. 31 at 15–16); *see* Ala. Code § 8-19A-3(3). The court disagrees. In § 8-19C-2(a), the Alabama Legislature chose to use the term "telephone solicitation" instead of the term "commercial telephone solicitation." This court is bound by the language used in the statute and cannot read "commercial" into the statute of its own accord. *See Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (explaining that a court cannot "do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it"). The court therefore must use the definition given for "telephone solicitation," which requires a "voice communication." Ala. Code § 8-19A-3(17). Mr. Underwood has not alleged that he ever received a "voice communication." Accordingly, the court **WILL GRANT** Cygnal's motion to dismiss Count Three.

## III. CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** Cygnal's motion to dismiss the amended complaint. The court **WILL DISMISS** Counts Two and Three **WITH PREJUDICE**, but the court **WILL DENY** the motion to dismiss Count One.

The court will enter a separate order consistent with the opinion.

**DONE** and **ORDERED** this June 27, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE